# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

AD INNOVATIONS, LLC,
   *Plaintiff,*

v.

MERCEDES-BENZ USA, LLC,
   *Defendant.*

Case No. 3:25-cv-01362

**JURY TRIAL DEMANDED**

## DEFENDANT MERCEDES-BENZ USA, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULES 12(b)(6) AND 12(b)(3)

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................2

    A.   The Asserted Patent ..................................................................................2

    B.   The Complaint ...........................................................................................3

III.  LEGAL STANDARD ............................................................................................3

    A.   Subject Matter Eligibility Under 35 U.S.C. § 101 ...................................3

    B.   Dismissal Under Federal Rule of Civil Procedure 12(b)(6) ....................5

    C.   Dismissal Under Federal Rule of Civil Procedure 12(b)(3) ....................5

IV.   ARGUMENT .........................................................................................................5

    A.   The '341 Patent Recites Ineligible Subject Matter ..................................5

        1.   *Alice* Step One.............................................................................. 6

        2.   *Alice* Step Two............................................................................. 11

        3.   Summary ....................................................................................... 13

    B.   The Complaint Fails to Establish that Venue is Proper in this District ................14

    C.   The Complaint Fails to State a Claim for Induced Infringement...........................16

    D.   The Complaint Fails to State a Claim for Pre-Suit Induced Infringement ...........18

V.    CONCLUSION.....................................................................................................19

i

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015)..............16, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014)........................................3, 4, 11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................5

*BSG Tech LLC v. Buyseasons, Inc.,* 899 F.3d 1281 (Fed. Cir. 2018).............................4

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) .....................4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)....................................................................................5

*Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599 (N.D.
  Tex. 2017) ............................................................................................14, 15, 16

*In re ZTE (USA) Inc.*, 890 F.3d 1008 (Fed. Cir. 2018)...................................................5

*Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015) ......................4

*Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315 (Fed. Cir. 2017)......................4

*Intell. Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307 (Fed. Cir. 2016) ...........................4, 8, 12

*Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915 (2014).........................16

*Magnacross LLC v. OKI Data Ams., Inc.*, No. 3:20-cv-01959, 2022 WL 992595
  (N.D. Tex. Mar. 31, 2022) ..........................................................................................13

*Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280 (Fed. Cir. 2024) .................................8, 10, 12

*Mullen Indus. LLC v. Samsung Elecs. Co., Ltd.*, No. 2:24-cv-00049, 2024 WL
  4870768 (E.D. Tex. Nov. 21, 2024) ...........................................................................18

*PerformancePartners LLC v. NextGen Parking, LLC*, No. 3:23-cv-0564,
  2004 WL 1317800 (N.D. Tex. Mar. 26, 2024) ...........................................................9, 10, 13

*PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310 (Fed. Cir. 2021)..........................8, 9, 13

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) .................................4, 5

*Seven Networks, LLC v. Motorola Mobility LLC*, No. 3:21-cv-01036, 2022 WL 426589 (N.D. Tex. Feb. 10, 2022) ................................................................18, 19

*Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353 (Fed. Cir. 2020) ........................6, 10

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017) ..................................4

*Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355 (Fed. Cir. 2023) ...................5, 6, 9, 10, 13

*Valeant Pharms. N. Am. LLC v. Mylan Pharms. Inc.*, 978 F.3d 1374 (Fed. Cir. 2020) ................................................................14

**Statutes**

28 U.S.C. § 1400(b) .............................................................................................................5, 13

35 U.S.C. § 101 ......................................................................................................................3, 4

**Other Authorities**

Fed. R. Civ. P. 12(b)(3) ................................................................................................1, 5, 14, 19

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 5, 13, 19

## I.    INTRODUCTION

Defendant Mercedes-Benz USA, LLC ("MBUSA") moves to dismiss the Complaint of Ad Innovations, LLC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3).

First, the Complaint should be dismissed because the asserted patent is directed to ineligible subject matter. This case presents a classic example of a patent that simply uses a computer to implement a mental process. The asserted patent, U.S. Patent No. 8,594,341 (the "'341 patent"), purports to improve a driver's listening experience. Drivers often listen to music (or other audio) content while driving. But, if the driver notices a horn or emergency siren, the driver may need to turn down (or turn off) the music to be able to clearly hear and respond to the external sound. The '341 patent employs a conventional computer to perform that process for the driver. Specifically, the '341 patent uses a computer to interrupt the music content so that the driver can hear the external sound. It is well-established, though, that taking a mental process and merely performing it with a computer is not patentable. Courts routinely grant motions to dismiss under Rule 12(b)(6) in such circumstances.

Second, the Complaint should be dismissed because it does not establish that venue is proper in this District. The Complaint alleges that MBUSA infringes the asserted patent based on the use and sale of certain Mercedes-Benz vehicles that include DRIVE PILOT and Cerence Emergency Vehicle Detection ("EVD") in this District. But Mercedes-Benz vehicles with DRIVE PILOT and Cerence EVD are only sold in California and Nevada, and those features can only be used while driving on certain roads in California and Nevada, all as reflected in public records. Thus, the alleged acts of infringement in the Complaint do not occur in this District and the Complaint must be dismissed under Rule 12(b)(3) for improper venue.

1

Third, the Complaint's claim for induced infringement should be dismissed in whole or in part because it does not allege sufficient facts to show a plausible claim to relief. Specifically, the claim for induced infringement relies on actions of MBUSA's customers. But the Complaint does not plausibly show that MBUSA's customers perform all the steps of the only asserted claim. Nor does the Complaint plausibly show that the alleged performance of some steps by MBUSA are attributable to MBUSA's customers, or vice versa. Further, the claim for pre-suit induced infringement does not allege sufficient facts to plausibly show that MBUSA had pre-suit knowledge of the '341 patent.

## II.    FACTUAL BACKGROUND

### A.    The Asserted Patent

The '341 patent explains that there are multiple audio sources "in an automobile," namely: 1) sound from the audio device (e.g., music content); 2) sound from outside the car (e.g., car horn or emergency vehicle siren); and 3) sound from within the car (e.g., passengers). Dkt. 1-1 at 1:32-36. "The user frequently has a desire and a need to be able to process all of these distinct sound channels, but the challenge is in processing only channels that the user has the need to listen to at the specific time." *Id.* at 1:36-40. "By example, if a user were driving a car, the user may want to only listen to music content in a sealed environment." *Id.* at 1:40-45. But "the sound of a car horn or the sound of an emergency vehicle are two noises that the user would want to . . . hear." *Id.* at 1:45-50. "[T]he user may also have a need to hear other occupants of his vehicle." *Id.* at 1:51-53.

The '341 patent provides "[a] system and method for selectively switching between a plurality of audio channels with or without user input." *Id.* at 1:63-65, Abstract. "The system will . . . produce desired audio content to a user, but will interrupt the audio content when

predetermined sound patterns," such as horns or emergency vehicles, "are detected and subsequently play the sound patterns to the user." *Id.* at 1:65-2:1. "The resulting experience . . . is one where the user can enjoy audio content with a total lack of distraction, until the system and method selectively allows certain important and selected sounds to interrupt the audio content." *Id.* at 2:8-12, 3:28-32, Abstract.

### B.    The Complaint

Ad Innovations filed a Complaint alleging infringement of the '341 patent. Dkt. 1 at ¶9. The Complaint asserts that MBUSA directly infringes claim 40 of the '341 patent "by performing (through use and testing) the claimed method" in this District. *Id.* at ¶13. More specifically, the Complaint states that, in this District, MBUSA "provides the S-Class vehicle" that "comes with Drive Pilot technology and the MBUX multimedia system, which integrates Cerence EVD, to detect when an emergency vehicle approaches from behind and alert[] users visually and via audio through the MBUX multimedia system." *Id.* at ¶¶14-15. The Complaint also asserts that MBUSA induces infringement of claim 40 in this District "by providing the S-Class vehicle, which is equipped with the MBUX multimedia system and Drive Pilot and integrate[s] the Cerence Emergency Vehicle Detection (EVD) . . . for use by [MBUSA's] customers." *Id.* at ¶20.

## III.    LEGAL STANDARD

### A.    Subject Matter Eligibility Under 35 U.S.C. § 101

35 U.S.C. § 101 defines patent eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter." The Supreme Court, however, has recognized that § 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable" because they are "the basic tools of scientific and technological

work." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The Supreme Court set forth a two-step framework for courts to determine patent eligibility. *Id*. at 217-18.

Step one involves determining whether the claims are directed to a patent-ineligible concept. *Id*. at 218. This requires evaluating "the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter," such as an abstract idea. *Intell. Ventures I LLC v. Erie Indem. Co*., 850 F.3d 1315, 1325 (Fed. Cir. 2017). Even if the claims are limited "to a particular field of use or technological environment, such as the Internet," an abstract idea "does not become nonabstract." *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015). Thus, step one considers whether the "focus of the claims" is on a "specific asserted improvement in computer capabilities . . . , or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *BSG Tech LLC v. Buyseasons, Inc.,* 899 F.3d 1281, 1286 (Fed. Cir. 2018).

Step two involves searching for an "inventive concept," i.e., "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice,* 573 U.S. at 218-19. Implementing an abstract idea with "well-understood, routine, conventional" computer functions is not sufficient. *Id.* at 225-26. Further, any inventive concept must be "in the claims," not in unclaimed "technological details set forth in the patent's specification." *Intell. Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307, 1322 (Fed. Cir. 2016) ("*Symantec*").

Subject matter eligibility under § 101 "may be determined at the Rule 12(b)(6) stage of a case." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019). "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts . . . require a holding of ineligibility under the

substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see also Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage."). Claim construction is not a prerequisite to determining subject matter eligibility at the pleadings stage. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

### B.    Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### C.    Dismissal Under Federal Rule of Civil Procedure 12(b)(3)

Rule 12(b)(3) requires dismissal of a complaint when venue is improper. An "action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The plaintiff bears the burden to show that venue is proper in an action for patent infringement. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1014 (Fed. Cir. 2018).

## IV.    ARGUMENT

### A.    The '341 Patent Recites Ineligible Subject Matter

The Complaint should be dismissed under Rule 12(b)(6) because the undisputed facts require a finding that the claims of the '341 patent are directed to ineligible subject matter.

### 1.    *Alice* Step One

Step one of the *Alice* framework involves determining whether the claims of the '341 patent are directed to a patent ineligible concept, such as an abstract idea. *Trinity*, 72 F.4th at 1361. "To determine whether a claim is 'directed to' a patent ineligible concept, we evaluate 'the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter.'" *Id.*; *see Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1359 (Fed. Cir. 2020). A "telltale sign of abstraction" is when the claimed functions are "mental processes that 'can be performed in the human mind' or 'using a pencil and paper.'" *Trinity*, 72 F.4th at 1361-62.

The '341 patent is directed to a mental process that can be performed in the human mind. Specifically, the claims of the '341 patent are directed to selectively switching between a plurality of audio channels. Dkt. 1-1 at 8:20–21, 9:31–32, 10:34–36, 11:45–47. The '341 patent explains why the claimed technique is allegedly an improvement over the prior art. According to the patent, there are multiple audio sources "in an automobile," namely: 1) sound from the audio device (e.g., music content); 2) sound from outside the car (e.g., car horn or emergency vehicle siren); and 3) sound from within the car (e.g., passengers). *Id.* at 1:32-36. The problem is that a driver "may want to only listen to music content," but also needs to hear "the sound of a car horn or the sound of an emergency vehicle." *Id.* at 1:36–50.

The claimed advance of the '341 patent is that its technique will "produce desired audio content to a user" (e.g., music content), "but will interrupt the audio content when predetermined sound patterns" (e.g., horn or siren) "are detected." *Id.* at 1:65-2:1. The "resulting experience" is that "the user can enjoy audio content with a total lack of distraction." *Id.* at 2:8-12, 3:28-32,

Abstract. In other words, with the claimed technique, the driver no longer needs to pay attention to sounds other than the desired music content. *Id.*

A human can perform the claimed process of switching between a plurality of audio channels. For example, a driver can listen to music content on the vehicle's audio system and then turn the music off (or pause it) in order to hear a horn or siren. Alternatively, a passenger in the vehicle could turn the music off and alert the driver of the horn or siren. The '341 patent simply uses a computer to perform this mental process. In fact, the '341 patent acknowledges as much by stating that the "resulting experience" of the claimed technique is that the driver can enjoy the desired audio content without the mental "distraction" of listening for other sounds. *Id.* at 2:8-12, 3:28-32, Abstract; *see also id.* at 1:36-40 ("The user frequently has a desire and a need to be able to *process* all of these distinct sounds channels.") (emphasis added).

The independent claims demonstrate that the '341 patent is directed to a mental process. Independent claim 40[1] recites:

> A method for selectively switching between a plurality of audio channels in an audio device, the method comprising the steps of:
>
> prestoring a plurality of predetermined digital sound patterns in a memory device, each of the plurality of predetermined digital sound patterns corresponding to a preselected external audio sound;
>
> supplying audio content on a first channel of the audio device;
>
> *generating an acoustic signal from sound external to the audio device on a second channel*[;]
>
> receiving the audio content on the first channel and the acoustic signal on the second channel;
>
> *determining whether the acoustic signal matched at least one of the plurality of predetermined digital sound patterns stored in the memory device,*

---

[1] Claim 40 is the only claim asserted in the Complaint. Dkt. 1 at ¶¶13, 20. It is unknown if Ad Innovations intends to assert additional claims. Regardless, this Motion shows that all the claims of the '341 patent are directed to ineligible subject matter.

wherein *if the acoustic signal matches at least one of the plurality of predetermined digital sound patterns stored in the memory device, selecting the second channel* such that an audible sound is generated from the second channel based on the acoustic signal, and

*if the acoustic signal does not match at least one of the plurality of predetermined digital sound patterns stored in the memory device, selecting the first channel* such that an audible sound is generated from the first channel based on the audio content wherein the audio device includes a vehicular audio device.

*Id.* at 11:45-12:16 (emphasis added). Independent claims 1, 15, and 27 are apparatus claims that recite nearly identical limitations. *Id.* at 8:20-48, 9:31-59, 10:34-61.

As shown above, the independent claims involve three main features: 1) receiving sound external to an audio device; 2) comparing the external sound to predetermined sound patterns; and 3) selecting between a first audio channel and a second audio channel based on the comparison. Humans perform each of these functions. A human can listen for a sound external to a vehicle's audio device. A human can determine if the external sound matches a predetermined sound pattern (e.g., horn or siren). And a human can select between listening to a first audio source (e.g., the vehicle's audio device) or a second audio source (e.g., the horn or siren). Thus, the claims as a whole "are directed to a medley of mental processes that, taken together, amount only to a multistep mental process." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317-18 (Fed. Cir. 2021).

The Federal Circuit has consistently found that claims are directed to an abstract idea when they simply recite performing an action based on the result of a comparison. For example, the Federal Circuit determined that claims reciting a process of "*receiving* information, associating information with images, *comparing* the images, and presenting the information *based on the comparison*" were directed to an abstract idea. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1292 (Fed. Cir. 2024) (emphasis added). The Federal Circuit similarly held that claims reciting the steps of "(1) *using* a content-based identifier generated from a 'hash or

8

message digest function,' (2) *comparing* that content-based identifier against something else . . .; and (3) *providing access* to, denying access to or deleting data" were directed to an abstract idea. *PersonalWeb Techs.*, 8 F.4th at 1315-17 (emphasis added); *see also Symantec*, 838 F.3d at 1313 (finding claims that recite "determining . . . whether each received content identifier *matches* a characteristic of other identifiers" are abstract) (emphasis added)).

This Court has also held that claims for receiving, storing, and comparing information are directed to an abstract idea. In *PerformancePartners LLC v. NextGen Parking, LLC*, No. 3:23-cv-0564, 2004 WL 1317800 at *6 (N.D. Tex. Mar. 26, 2024), the Court addressed a patent directed to a "system of identifying the characteristics of a vehicle and storing the data for future use." The claimed system "operate[d] by *collecting information* at a vehicle entrance, *storing that information*, and then *comparing that information* against information collected at a vehicle exit." *Id.* at *7 (emphasis added). The Court held that the claims were directed to "'the abstract idea' of storing and comparing information." *Id.* at *8.

Further, the independent claims of the '341 patent do not recite an improvement in computer functionality. The claims recite "a memory device," "a controller," "a switching mechanism," "an audio content device," a "microphone," "an audio signal processing control unit," and "an audio output device." Dkt. 1-1 at 8:28, 8:32, 8:49-50, 9:34, 9:36, 9:43, 9:57-58. But the claims do not recite any features that would improve the functionality of these components or the computer as a whole. *See id.* Rather, the "claims are directed to an abstract idea that merely seeks to use computers as a tool, not on an improvement in computer capabilities." *See Trinity*, 72 F.4th at 1363; *PerformancePartners*, 2004 WL 1317800 at *8 ("Although the '435 Patent arises in the realm of computers, it is not directed at improving computer capabilities or network functionality."). As discussed, the '341 patent acknowledges

that the "resulting experience" of the claimed technique is that the driver can enjoy the desired audio content without the mental "distraction" of listening for other sounds. Dkt. 1-1 at 2:8-12. In other words, the claims use a computer to "improv[e] a user's experience," but do not improve the computer itself. *See Mobile Acuity*, 110 F.4th at 1294; *see also Simio*, 983 F.3d at 1361 ("[T]his argument does not explain how the *computer's* functionality is improved beyond the inherent improvement of the experience of a user.").

The dependent claims of the '341 patent are directed to the same abstract idea of selectively switching between a plurality of audio channels and merely add "generic computer components" or "conventional computer activities." *See Mobile Acuity*, 110 F.4th at 1291-92. Dependent claims 2, 8, 12, 13, 16, 19, 24, 25, 28, 31, 36-38, 41, and 44 recite a switching mechanism for performing the claimed audio channel selection. Dependent claims 3-7, 14, 17, 18, 26, 29, 30, and 39 recite different types of audio components, including a hardwired port, a wireless port, a microphone, an audio output device, and an audio content device. Dependent claims 9, 10, 22, 23, 34, 35, 42, and 43 recite specific predetermined sound patterns, including human speech and emergency sounds. Dependent claims 11, 20, 21, 32, 33, 45, and 46 specify that audio content on the first channel is stored or paused while the second channel is selected. And dependent claims 47-55 recite different memory configurations. These additional limitations do not change the "character as a whole" of the claims. *See Trinity*, 72 F.4th at 1361.

The allegations in the Complaint further confirm that the claims of the '341 patent are directed to an abstract idea. The Complaint states that the '341 patent is directed to "switching between a plurality of audio channels" and specifically to "enabling a user to listen to desired audio content *with a total lack of distraction* while selectively allowing certain important and selected sounds to interrupt the audio content." Dkt. 1 at ¶11 (emphasis added). Thus, the

10

Complaint makes clear that the claimed advance of the '341 patent is simply to improve a user's experience by implementing a mental process with a computer. The Complaint does not identify any claimed improvements in computer functionality. *See id.* at ¶¶11-12.

> ### 2.    *Alice* Step Two

Step two of the *Alice* framework involves "a search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18. Implementing an abstract idea with "well-understood, routine, conventional" computer functions is not sufficient. *Id.* at 225-26. "Thus, if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' that addition cannot impart patent eligibility." *Id.* at 223 (internal citation omitted).

The independent claims of the '341 patent recite well-known and conventional computer components. The table below demonstrates that each recited component is described by the specification as being well-known or conventional.

| Claimed Component | Specification Description |
|---|---|
| first audio input connection (*see* claim 1) | Hardwired connection – "an RCA jack, a USB port, a FireWire port (IEEE 1394), serial port, parallel port, etc." Dkt. 1-1 at 3:51-56, 4:1-4.<br><br>Wireless connection – "any of the various known wireless protocols." *Id.* at 3:56-67, 4:1-4. |
| second audio input connection / microphone input device (*see* claims 1, 15, 27) | "microphone input device" coupled "by the various hardwired and wireless connections described above." *Id.* at 4:20-27. |
| memory device (*see* claims 1, 15, 27, 40) | "internal flash memory, compact flash cards, smartmedia cards, memory stick, a microdrive, etc." *Id.* at 5:27-30. |

| | |
|---|---|
| controller / audio signal processing control unit (ASPCU) (*see* claims 1, 15, 27) | "microprocessor" with "conventional circuitry to process the incoming audio content" and "conventional digital noise reduction processing circuitry." *Id.* at 4:35–39. 4:1–14, 5:10-13. |
| output connection (*see* claim 1) | Hardwired connection – "an RCA jack, a USB port, a FireWire port (IEEE 1394), serial port, parallel port, etc." *Id.* at 3:51-56.<br><br>Wireless connection – "any of the various known wireless protocols." *Id.* at 3:56-67. |
| audio content device (ACD) (*see* claims 15, 27) | "any device that produces and delivers an audio signal." *Id.* at 3:42–48. |
| audio output device (AOD) (*see* claim 15) | "any device known in the art to audibly produce sound from electrical signals." *Id.* at 4:64-66. |

Several dependent claims (*see* claims 2, 16, 28) introduce a switching mechanism, which the specification describes simply as "a relay, transistor, etc." *Id.* at 4:46–50. Thus, the recited hardware does not "offer[] a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment,' that is, implementation via computers." *See Alice*, 573 U.S. at 226.

The specification explains that the software used by the ASPCU (or generic controller) is also well-known and conventional. For example, the '341 patent states that the ASPCU uses "[c]onventional computer software programs . . . that allow human speech patterns to be converted . . . to digital signals." Dkt. 1-1 at 5:37-41. The '341 patent also states that any "presetting to recognize certain audio sounds could be programmed from inception by the manufacturer of the system of the present disclosure, or alternatively, could be programmed by the user of the system who would program the ASPCU by means of a computer or other

programming device coupled to the ASPCU via input/output port 134." *Id.* at 5:21-27. Thus, the '341 patent uses "generic" and "routine" software to implement the underlying abstract idea. *See Trinity*, 72 F.4th at 1367.

This Court has held that similar claims lack an inventive concept. In *Magnacross LLC v. OKI Data Ams., Inc.*, No. 3:20-cv-01959, 2022 WL 992595, at *6 (N.D. Tex. Mar. 31, 2022), for example, the Court addressed a claim with "elements [that] are generic and conventional." The claim at issue recited "generic terms, such as 'data,' digital and analog, a 'communications channel,' 'data sensor,' and 'data processing means,' as well as routine functions, such as transmitting data, to implement the underlying invention." *Id.* The specification "acknowledge[d] that the claimed data sensors [we]re known in the art," and the communications channel was "generic or conventional." *Id.* The Court thus held that "none of the claim's elements, assessed individually and as an ordered combination, disclose an inventive concept." *Id.*

### 3.    Summary

For the reasons discussed above, the undisputed facts demonstrate that the claims of the '341 patent are directed to ineligible subject matter. This Court routinely grants motions to dismiss under Rule 12(b)(6) in such circumstances. *See, e.g.*, *PerformancePartners*, 2024 WL 1317800, at *11 (granting "[m]otion to [d]ismiss" based on conclusion that the asserted patent recites ineligible subject matter "under Section 101"); *Magnacross*, 2022 WL 992595, at *7 (granting "[m]otion to [d]ismiss" based on conclusion that the asserted patent "is directed to patent ineligible subject matter"). Thus, the Complaint should be dismissed for failure to state a claim to relief that is plausible on its face.

13

**B.    The Complaint Fails to Establish that Venue is Proper in this District**

The Complaint should be dismissed under Rule 12(b)(3) because it does not establish that venue is proper in this District. An "action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement *and* has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added). For purposes of § 1400(b), a domestic company resides only in the state where it is incorporated. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 270 (2017). The Complaint does not allege that MBUSA resides in this District. Dkt. 1 at ¶6.

Instead, the Complaint alleges that MBUSA has committed acts of infringement and has a regular and established place of business in this District. *Id.* The Complaint, however, does not plausibly allege that MBUSA committed acts of infringement in this District. *See Valeant Pharms. N. Am. LLC v. Mylan Pharms. Inc.*, 978 F.3d 1374, 1378 (Fed. Cir. 2020) ("For purposes of determining whether venue is proper in a district other than one in a state in which a defendant is incorporated, a court must determine, among other things, 'where the defendant has committed acts of infringement.'"); *Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 609 (N.D. Tex. 2017) ("The Court thus determines that venue is not proper in this district because no act of infringement occurred here.").

The Complaint asserts that MBUSA directly "infringes claim 40 of the '341 patent by performing (through use and testing) the claimed method." Dkt. 1 at ¶13. The Complaint alleges such direct infringement occurs based on MBUSA's use and testing of certain Mercedes-Benz vehicles in this District that "include[] Drive Pilot" and "integrate[] Cerence Emergency Vehicle Detection (EVD)." *Id.* at ¶14. The Complaint also asserts that MBUSA "is inducing infringement of claim 40 of the '341 patent" in this District by providing to customers certain Mercedes-Benz

14

vehicles that include "Drive Pilot and integrate the Cerence Emergency Vehicle Detection (EVD)." *Id.* at ¶20.

According to the Complaint, "Drive Pilot" is "an automated driving system that allows users to take their hands off the steering wheel," and "detects when an emergency vehicle approaches from behind and provides visual and audio alerts for the users to regain control of the vehicle." *Id.* at ¶14. The Complaint states that Cerence EVD "uses the car's interior microphones to capture sounds from the surroundings" and "identify sirens of emergency vehicles." *Id.* The Complaint further states that "when a siren from an emergency vehicle is detected, the MBUX multimedia system overrides the ongoing audio playback, such as music, and alerts the user." *Id.* The Complaint thus alleges that Mercedes-Benz vehicles use DRIVE PILOT with Cerence EVD to perform all the limitations of claim 40. *Id.* at ¶¶14-19.

The Complaint, however, does not plead sufficient facts to plausibly allege that any acts of infringement occur in this District. Nor could it. DRIVE PILOT and Cerence EVD are only available on select Mercedes-Benz vehicles, namely certain EQS sedans and S-Classes that are equipped with certain hardware. Appendix at 4-5 (¶¶4-5). Those vehicles are sold only in California and Nevada. *Id.* Further, the DRIVE PILOT and Cerence EVD features in those vehicles are only usable on certain roadways in California and Nevada. *Id.* This information is readily available to the public from MBUSA's marketing materials, including its website. *Id.* at 8 ("allows automated driving . . . on approved freeway sections in California and Nevada"); *id.* ("only compatible with select EQS Sedans and S-Classes sold in California and Nevada that are pre-optioned with DRIVE PILOT and the corresponding necessary hardware").

MBUSA does not use, sell, or offer for sale vehicles utilizing DRIVE PILOT and Cerence EVD in this District. *Id.* at 4-5 (¶¶4-5). Further, MBUSA's end-user customers do not

use DRIVE PILOT and Cerence EVD in this District. *Id.* As such, the Complaint fails to plead sufficient facts to show that MBUSA committed acts of direct infringement or inducement in this District. Thus, because venue is improper in this District, the Complaint should be dismissed. *See Galderma*, 290 F. Supp. 2d at 609 (granting "Rule 12(b)(3) motion to dismiss" because "Plaintiffs have failed to carry their burden to establish that an act of infringed occurred in this district").

### C.    The Complaint Fails to State a Claim for Induced Infringement

The Complaint's claim for induced infringement should be dismissed under Rule 12(b)(6) because it does not allege enough facts to plausibly show that MBUSA's customers directly infringe claim 40, i.e., the only claim asserted in the Complaint.

"[I]nducement liability may arise 'if, but only if, [there is] . . . direct infringement.'" *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014). "Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). "Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Id.* An entity is "responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.* "[A] single entity directs or controls the acts of another" when "it acts through an agent . . . or contracts with another to perform one or more steps of a claimed method." *Id.* at 1022-23. An entity also directs or controls the acts of another when it "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.* at 1023.

16

The Complaint asserts that MBUSA "has been and now is inducing infringement of claim 40 of the '341 patent . . . by providing the S-Class vehicle . . . for use by [MBUSA's] customers to perform a method that infringes claim 40 as described above." Dkt. 1 at ¶20. Claim 40 recites:

> A method for selectively switching between a plurality of audio channels in an audio device, the method comprising the steps of:
>
> *prestoring a plurality of predetermined digital sound patterns in a memory device*, each of the plurality of predetermined digital sound patterns corresponding to a preselected external audio sound;
>
> supplying audio content on a first channel of the audio device;
>
> generating an acoustic signal from sound external to the audio device on a second channel[;]
>
> receiving the audio content on the first channel and the acoustic signal on the second channel;
>
> determining whether the acoustic signal matched at least one of the plurality of predetermined digital sound patterns stored in the memory device,
>
> wherein if the acoustic signal matches at least one of the plurality of predetermined digital sound patterns stored in the memory device, selecting the second channel such that an audible sound is generated from the second channel based on the acoustic signal, and
>
> if the acoustic signal does not match at least one of the plurality of predetermined digital sound patterns stored in the memory device, selecting the first channel such that an audible sound is generated from the first channel based on the audio content wherein the audio device includes a vehicular audio device.

Dkt. 1-1 at 11:45-12:16 (emphasis added).

The Complaint does not allege enough facts to plausibly show that MBUSA's customers directly infringe claim 40. It alleges that MBUSA "performs the step of prestoring a plurality of predetermined digital sound patterns in a memory device." Dkt. 1 at ¶15. It also alleges that MBUSA "provides the S-Class" to customers "*with prestored* predetermined digital sound patterns in a memory device." *Id.* at ¶20 (emphasis added). In other words, according to the Complaint, customers receive the S-Class with predetermined digital sound patterns *already* prestored in memory. *Id.* The Complaint does not allege that MBUSA's customers perform the

17

step of prestoring a plurality of predetermined digital sound patterns in a memory device, as required by claim 40. *See id.*

The Complaint asserts that "[e]ven where performance of the steps required to infringe claim 40 of the '341 patent is accomplished by [MBUSA] and [MBUSA's] customer jointly, [MBUSA's] actions have solely caused each of the steps to be performed." *Id.* This allegation is insufficient to establish direct infringement of claim 40. The Complaint does not allege that S-Class customers are agents of MBUSA or are contracted to perform any step of claim 40. *See id.*; *Akamai*, 797 F.3d at 1022-23. Nor does the Complaint allege that MBUSA conditions participation in an activity or receipt of a benefit upon performance of a step of claim 40 and establishes the manner or timing of that performance. *See* Dkt. 1 at ¶20; *Akamai*, 797 F.3d at 1022-23. Finally, the Complaint does not allege that MBUSA and S-Class customers form a joint enterprise. *See* Dkt. 1 at ¶20; *Akamai*, 797 F.3d at 1022-23.

Thus, because the Complaint fails to allege enough facts to plausibly show that MBUSA's customers directly infringe claim 40, the Complaint's claim for induced infringement should be dismissed. *See Mullen Indus. LLC v. Samsung Elecs. Co., Ltd.*, No. 2:24-cv-00049, 2024 WL 4870768, at *3-4 (E.D. Tex. Nov. 21, 2024) (finding "the Complaint does not plausibly plead a claim for divided infringement" because it "fails to allege that Defendants have the requisite 'direction or control' over the other actors' performance.").

### D.    The Complaint Fails to State a Claim for Pre-Suit Induced Infringement

The Complaint's claim for pre-suit induced infringement should be dismissed under Rule 12(b)(6) because it does not allege enough facts to plausibly show that MBUSA had pre-suit knowledge of the '341 patent. This Court has held that "a plaintiff's failure to adequately plead pre-suit knowledge requires dismissal of claims for induced infringement based on pre-suit

conduct." *Seven Networks, LLC v. Motorola Mobility LLC*, No. 3:21-cv-01036, 2022 WL 426589, at *11 (N.D. Tex. Feb. 10, 2022).

The Complaint asserts that MBUSA "*has been* and now is inducing infringement of claim 40 of the '341 patent." Dkt. 1 at ¶20 (emphasis added). Thus, the Complaint includes a claim for induced infringement based on pre-suit conduct. *Id.* The Complaint, though, does not include any allegations of pre-suit knowledge of the '341 patent. *See id.* The Complaint alleges only that "*[a]t least as of the filing of this lawsuit and service of the Complaint*, [MBUSA] has had knowledge of the '341 Patent and knowledge that use of the MBUX multimedia system, which integrates features including Cerence EVD in its S-Class, constituted direct patent infringement." *Id.* (emphasis added). "But notice from the lawsuit cannot support allegations of pre-suit induced infringement because knowledge that the patent exists and that the induced acts constitute infringement remain critical elements of establishing an inducement claim." *Seven Networks*, 2022 WL 426589, at *11. Thus, Ad Innovations' "failure to plead facts supporting pre-suit knowledge compels dismissal of any claims for pre-suit induced infringement." *Id.*

## V.    CONCLUSION

For the reasons discussed, the Complaint should be dismissed with prejudice (1) under Rule 12(b)(6) for the claims of the '341 patent being directed to ineligible subject matter and (2) under Rule 12(b)(3) for improper venue. Further, the Complaint's claim for induced infringement should be dismissed with prejudice in whole or in part under Rule 12(b)(6).

19

Dated: September 8, 2025

Respectfully submitted,

*/s/ Celine J. Crowson*

Celine J. Crowson (admitted *pro hac vice*)
Joseph J. Raffetto (admitted *pro hac vice*)
**HOGAN LOVELLS US LLP**
555 Thirteenth St, NW
Washington, DC 20004
Telephone: (202) 637-5703
Facsimile: (202) 637-5910
Email: celine.crowson@hoganlovells.com
Email: joseph.raffetto@hoganlovells.com

*/s/ Mark J. Dyer*

Mark J. Dyer
State Bar No. 06317500
**MARTIN, DISIERE, JEFFERSON &
WISDOM, LLP**
9111 Cypress Waters Blvd., Suite 250
Dallas, TX 75019
Telephone: (214) 420-5510
Facsimile: (214) 420-5501
Email: dyer@mdjwlaw.com

*Counsel for Defendant Mercedes-Benz USA,
LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2025, I caused one copy of the foregoing Motion to

Dismiss to be served on all parties and counsel of record via the Court's CM/ECF system.


<u>/s/ Jason A. Bradley</u>
Jason A. Bradley